491. SIZEMORE *et al. v.* WOOLARD, administratrix.

1. A writ of error will not be dismissed when the bill of exceptions contains one sufficient assignment of error, no matter how defective other assignments of error, therein contained, may be.
2. A buyer is not presumed to waive defects of which he has no knowledge, but he is held to waive those defects which he knows to exist. Where one gives a note for the purchase of an article which is defective, after full knowledge of its defects, he will be held to have waived the defects, and can not set up the same by plea of failure of consideration, in defense to an action on the note.

Complaint, from city court of Sylvester—Judge Park. November 27, 1906.

Submitted October 15,—Decided December 20, 1907.

*Payton & Hay,* for plaintiffs in error. *J. H. Tipton,* contra.

RUSSELL, J. H. C. Woolard sued G. W. Sizemore Sr. and G. W. Sizemore Jr., on a conditional-sale note and contract. Subsequently to the filing of the bill of exceptions, the plaintiff, Woolard, died; and his administratrix has, by proper order, been made defendant in error in his place. The contract of purchase between the parties, which is attached to the declaration, was dated April 17, 1905, and provided for the payment by the Sizemores to Woolard of $1,200, in three equal payments, the last payment being due December 1, 1905. The consideration, as expressed in the contract, was the purchase-price of a boiler, three engines, a sawmill with carriage, a shingle-mill, a planer, carts, and log-chains, seventeen rollers, and one hundred acres of mill timber. Payments had been made on the note, which reduced the unpaid balance to $411.-

83; and judgment was asked for this amount. The defendants, in their answer, denied the paragraphs of the plaintiff's petition, and in addition pleaded total failure of consideration as to two of the engines, and asked judgment against the plaintiff for the difference between $500, which the plea alleged to be the value of the two engines, and the amount of the plaintiff's demand. On the trial the defendants admitted the execution of the contract and abandoned the issue raised as to the attorney's fees. The defendants thus assumed the burden of proof and undertook to establish their plea of total failure of consideration. The testimony in behalf of the defendants was to the effect that the engines mentioned in their plea were totally worthless, of no value for the purpose of producing steam with which to operate the machinery, and of no value unless for scrap iron. The evidence, however, showed unequivocally that the defendant G. W. Sizemore Sr. made a thorough examination of the machinery before the trade was made; that he was informed that the machinery "had been burned down on;" and that he had been engaged in running sawmills and using engines and boilers for four or five years prior to the time of making the trade with Woolard. According to the evidence the trade was made December 27, 1904. The note with reservation of title, which was the basis of the suit, was made April 17, 1905. The testimony for the defendants further showed that during all the negotiations leading up to the trade of December, 1904, the parties "talked about the whole thing as it stood; the timber and all of this machinery; everything in a lump, altogether. This is the way we traded; that is the way Woolard offered it for sale, and that is the way I bought it." At the conclusion of the testimony of the defendant G. W. Sizemore Sr. the court, upon motion of counsel for the plaintiff, directed a verdict in favor of the plaintiff, for the principal, interest, and attorney's fees sued for, and judgment was entered in accordance with the verdict. It appears, from the bill of exceptions, that the defendants offered to amend their plea by alleging that at the time of the execution of the contract sued on, Woolard offered to make the necessary reduction on account of the two defective engines. The court refused to allow the amendment. The court certifies that this offer to amend was made after the verdict had been directed; and in the bill of exceptions no assignment of error is made as to the amendment.

The defendants in error have filed a motion to dismiss the writ of error. The motion to dismiss can not be sustained. While no exception is taken to the disallowance of the amendment, and while the exception to the judgment is perhaps not technically specific, the assignment of error on the ruling of the court directing the verdict is sufficient to present for our consideration the error therein alleged to have been committed. The first assignment of error is as follows: "To which ruling of the court, directing the verdict as aforesaid, the defendants hereby except and assign the same as error; defendants contend that the court erred especially in directing attorney's fees sued for, such verdict being wholly unwarranted by the law and evidence under the pleadings in this case." We think this presents squarely the question as to whether the court erred in directing the verdict instead of allowing the case to go to the jury. This may be treated as a general exception to the verdict. The assignment contains also a special exception with reference to the attorney's fees, which is good in form, though it is not well taken, because it appears from the record, as certified by the presiding judge, that the defense as to the attorney's fees was abandoned by the defendants. A writ of error will not be dismissed when the bill of exception contains one sufficient assignment of error, no matter how defective other assignments of error, therein contained, may be.

We do not think that the ruling of the court in directing a verdict in this case was error. Under the testimony of the defendants themselves, as delivered by the defendant who purchased the entire outfit, no other verdict could legally have been rendered than one in favor of the plaintiff. There was no issue as to the attorney's fees, and no question as to the amount due upon the note in case the defendants were liable at all. The issue resolved itself into the single question as to whether the defendants, under their own admissions, through the one who purchased, were not estopped from pleading failure of consideration, by reason of the fact that all defects in the machinery had been waived, and with it all of their rights dependent upon an implied warranty of suitableness. The defendants pleaded that there was an implied warranty that the engines were suited for running the machinery they purchased, and they proved that the engines were totally worthless for the purpose, but they also proved that the engines

were subjected to as close scrutiny as the purchaser, with four or five years experience in such matters, was able to give them before the trade was made. We have already held, in *Kronman* v. *Rousch,* 3 *Ga. App.* 152 (59 S. E. 320), that one will not be presumed to waive defects when not discoverable, nor where an inspection has not been made; but there is nothing in what was held in the *Kronman* case which conflicts with what we now hold or which is applicable to this case. In that case Kronman could have inspected, but on account of his absence from home did not actually inspect or examine the merchandise in question. One is not presumed to waive defects of which he has no knowledge, but he is held to waive those defects which he knows to exist in an article purchased. This distinction is clearly pointed out in *Means* v. *Subers,* 115 *Ga.* 373 (41 S. E. 633), and *Moultrie* v. *Hill,* 120 *Ga.* 730 (7), (48 S. E. 143). In both of these cases it is said that the rule will not be extended beyond the holding in the previous decisions that the law will not enforce a waiver of defects in case the maker of the note has, at the time of its execution, actual knowledge of the defects in the article purchased. In the *Means* case a charge that if the defendant could have ascertained by the exercise of ordinary diligence that inferior material was used in the article purchased, the execution and delivery of a note would amount to a waiver of the defendant's right to claim damages on account of the inferior material, was held to be erroneous; but the doctrine previously asserted in numerous decisions, that where one gives a note for the purchase-money of an article which is defective, with full knowledge of its defects, he will be held to have waived the defects, and can not set up the same in defense to an action on the note, was reaffirmed. Under the express statement in this case, repeated in the *Moultrie* case, it was held in the *Kronman* case that the defects were not waived because knowledge of the defects was not brought home to the purchaser. The present case, however, is controlled by the decisions in *Edison Electric Co.* v. *Blount,* 96 *Ga.* 272 (23 S. E. 306); *American Car Co.* v. *Ry. Co.,* 100 *Ga.* 254 (28 S. E. 40); *Lunsford* v. *Malsby,* 101 *Ga.* 39 (28 S. E. 496); *Page* v. *Dodson Co.,* 106 *Ga.* 80 (31 S. E. 804); *Montfort* v. *Guano Co.,* 108 *Ga.* 12 (33 S. E. 636).

In *Page* v. *Dodson Co.,* as in this case, the defendants had, "be-

fore the making of the contract, ample opportunity to inspect, and did in fact inspect the machines, and knew of, or.could by the exercise of ordinary diligence have discovered, the defects of which they afterwards complained." Justice Cobb, in rendering the opinion in the *Means* case, says that the *Page* case "is as far as this court has ever gone in holding that the giving of a note was a waiver of defenses founded upon the defective condition of the article which was the consideration of the note; and it was held there simply that where the evidence showed an actual inspection of the article, and the defects were of such a character that an inspection would bring them to light, the failure of the party inspecting to see the defects would not avail him as a defense to a suit on the note." In the present case Mr. Sizemore Sr., purchasing the engines, not only inspected them before the trade was made, but, after the trade was made, he put steam in the engines and as fully discovered their worthlessness as it was possible to do, more than three months before he gave the notes. He says, in his evidence, that he found out, eight or ten days after his purchase on December 27, that the engines were not fit to run; and yet, on April 17 thereafter, the defendants voluntarily executed the paper which is the basis of this suit. Clearly, under all of the decisions of the Supreme Court which we have cited, the defendants were estopped from setting up an implied warranty, or defects which they claimed breached this implied warranty. .Their conduct in giving the note waived the defects and the warranty. One who gives a note or makes an unconditional promise in writing for the payment of a debt, after the same has been contracted, waives all defenses of which he had full knowledge at the time of the execution of the contract. As was said in the *Malsby* case, supra, "The plea of failure of consideration, in so far as it rested upon the alleged unsuitableness of the machine for the purposes for which it was intended, because of certain defects existing therein, could not avail the defendants under the evidence in the case. The notes were not signed by the defendants until *after* they had examined the machine and tested it. . . The defects complained of and which existed in the machine were clearly discoverable by testing the same; for, as shown by the evidence, the defendants, when the machine was tested, did in fact discover the defects complained of and the lack of capacity in the machine to perform the service which it was represented it would

perform, and with knowledge of these facts they executed and delivered the notes now sued on. The law of implied warranty will not avail against patent defects, nor against latent defects which are either disclosed, or are discoverable by the exercise of caution on the part of the purchaser."

The defendants in the case at bar had actual knowledge in January, if not sooner, of all defects in the engines which they attempt to set up in this case, before they executed the contract in April; and, therefore, as to that there could be no failure of consideration. The knowledge of the defendants lost them the right to invoke the law of implied warranty, and they will be presumed to have contracted for the engines just as they stood. If any evidence were needed to corroborate this presumption of law, or could be properly used for that purpose, the evidence of the defendant that all the outfit, engines, boilers, shingle-mill, etc., were purchased in a lump would offer ample corroboration. See also *Harder* v. *Carter*, 97 *Ga.* 273 (23 S. E. 82) ; *Williams* v. *Wyley*, 45 *Ga.* 580; *Byrd* v. *Campbell Printing Press Co.*, 90 *Ga.* 547 (16 S. E. 267) ; *Hoffman* v. *Oates*, 77 *Ga.* 701. There was no error in directing a verdict for the plaintiff.          *Judgment affirmed.*