ELLIS ICE & COAL CO. v. CARBONDALE MACH. CO.

(Circuit Court of Appeals, Fifth Circuit. January 15, 1919.)

No. 3234.

1. SALES ⬌354(1)—ACTION FOR PURCHASE PRICE—DEFENSES—BREACH OF CONTRACT.

The plea in an action on a note given for part of the price of an ice machine *held* to sufficiently allege a breach of an express provision of the contract requiring plaintiff to replace free of charge parts which proved to have latent defects within one year.

2. SALES ⬌288(2)—ACTION FOR PURCHASE PRICE—BREACH OF WARRANTY.

In case of an express warranty that the property sold will be of a particular kind and quality, the purchaser has a right to rely on the warranty, and may plead partial failure of consideration growing out of defects discovered after acceptance, even though they would have been apparent on examination before delivery.

In Error to the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Action at law by the Carbondale Machine Company against the Ellis Ice & Coal Company. Judgment for plaintiff, and defendant brings error. Reversed.

Archibald Blackshear, E. H. Callaway, and Wm. M. Howard, all of Augusta, Ga., for plaintiff in error.

Shepard Bryan, of Atlanta, Ga., Wm. H. Barrett, of Augusta, Ga., and Lee M. Jordan, of Atlanta, Ga. (Barrett & Hull, of Augusta, Ga., on the brief), for defendant in error.

Before WALKER and BATTS, Circuit Judges, and SHEPPARD, District Judge.

WALKER, Circuit Judge. [1] This was an action by the defendant in error, Carbondale Machine Company (hereinafter referred to as the plaintiff), against the plaintiff in error, Ellis Ice & Coal Company (hereinafter referred to as the defendant), on a note given by the latter, dated December 11, 1915, for the sum of $4,333 and interest, payable to the order of the former 120 days after date. An amended plea of the defendant averred the following state of facts:

The consideration of the note sued on is a part of the purchase price of $14,000 of an ice-manufacturing machine sold by the plaintiff to the defendant by a written contract entered into between the parties on the 15th day of April, 1915, $9,667 of the purchase price having already been paid. By clause 3 of the contract the plaintiff agreed—

"to deliver to you [the defendant] f. o. b. Carbondale, free of charge, any parts which may prove to have latent defects within one year from date of shipment (provided that you use brine and ammonia of a quality and make recommended by us), and our liability is limited to the furnishing of such parts."

Another provision was the following:

"To construct the plant in all its parts in a thorough and workmanlike manner, using the best materials of their several kinds."

The specifications called for:

"Necessary ammonia connections, of extra heavy wrought pipe and special fittings, to connect the parts. Full weight wrought pipe, unless otherwise specified, will be used in construction of machine parts."

The defendant agreed:

"To give us [plaintiff] an acceptance in writing when we have complied with the conditions in the contract and have successfully operated the plant for ten days. This acceptance shall be deemed a waiver of all claims, etc., and thereafter we shall be liable only under clause 3."

"The plaintiff failed to deliver to the defendant and to install in its ice plant the necessary ammonia connections of extra heavy wrought pipe and special fittings to connect the parts, and failed to furnish full weight wrought pipe in the construction of the machine parts of said plant, and failed to construct the plant in all its parts in a thorough and workmanlike manner, using the best materials of the several kinds, in that the plaintiff furnished to the defendant and installed in its said ice plant ordinary or common fittings, which did not properly connect the various parts, the said fittings not being special fittings, in that they were not recessed, but were screwed fittings, and the said fittings were in no sense special fittings, the same not being recessed or backed up, and the said fittings were not of the best material of the kind specified, nor the best of the kind in general use for connecting the various parts of said ice machine, and the defendant avers that the fittings so furnished and installed in said ice plant constituted latent defects in said ice machine, and that defendant did not know that they were ordinary or common screwed fittings until on or about the 24th day of February, 1916, long after the defendant had executed the promissory note sued upon by the plaintiff, and long after the defendant had paid the plaintiff the sum of $9,-667, as hereinabove stated."

By a letter of date March 9, 1916, the defendant notified the plaintiff—

"that you did not install in our plant the kind of pipe your contract calls for," etc., and "the plaintiff sent one Botchford to inspect the said pipes and fittings, and on or about the 20th day of March, 1916, this defendant pointed out to the said Botchford, the agent and representative of the plaintiff, the said defects in said plants, and the defendant avers that it never accepted the said materials so furnished to it by the plaintiff, and that the plaintiff was on the ——— day of March, 1916, given full and complete notice of defendant's rejection of the said pipes and fittings installed in plant No. 2. * * * The plaintiff failed to remedy the defects in said pipe and said fittings so furnished to this defendant, although this defendant gave the plaintiff notice of the said defects within one year from the date of the shipment of the said materials so furnished, and did use the brine and ammonia of the quality and make recommended by the plaintiff. * * * By reason of the failure of the plaintiff to furnish necessary ammonia connections of extra heavy wrought pipe and special fittings to connect the parts, as hereinabove set out, and by reason of the installation in the said ice machine of common or ordinary fittings to connect the parts, the consideration has failed in the sum of $453.77, in that it will cost the defendant the sum of $453.77 to remove the said fittings so furnished and installed in the said plant by the plaintiff, and in that it will cost the defendant the sum of $453.77 to obtain special fittings to connect the various parts of the kind of material purchased of plaintiff and that plaintiff contracted to furnish the defendant."

The court sustained a demurrer to the above-mentioned plea. It also sustained a demurrer to a plea based upon an alleged noncompliance by the plaintiff with requirements of a contract entered into by the parties in 1912 for another ice-manufacturing machine, which was referred to as plaintiff's plant No. 1. What is relied on as a

ground of reversal is the action of the court in sustaining the demurrer to the first-mentioned plea; it being conceded by the counsel for the plaintiff in error that the demurrer to the other plea was properly sustained.

In the argument in behalf of the defendant in error it was suggested that the first-mentioned plea was subject to demurrer on the grounds:

(1) That the defendant waived any right of action or defense by accepting the machinery after trial;

(2) That the allegations of latent defects in plant No. 2 were mere conclusions; and

(3) That plaintiff was not notified of any latent defect in plant No. 2 within one year from date of shipment, and did not within that time make demand for any part which proved to have a latent defect.

The averments of the plea in question negative the conclusion that the defendant, by accepting plant No. 2 after trial, waived its right to have delivered by the plaintiff, f. o. b. Carbondale, free of charge, any parts which may prove to have latent defects within one year from date of shipment. The averments of the plea were sufficiently definite and specific in showing what defects were complained of, that they were latent, and that the defendant was duly notified of them within one year from the date of shipment.

[2] The averments of the plea in question show a breach of a warranty of parts of the machinery sold, and that the defendant has been damaged by the breach alleged.

"After acceptance of goods purchased, the presumption is that they are of the quality ordered, and the burden is on the buyer to prove the contrary. Partial payment, with knowledge of the defective condition, will not estop the buyer from pleading partial failure of consideration." Code of Georgia 1911, § 4137.

If under the terms of the contract any notice of the alleged latent defects was required to be given after they were discovered, the averments of the plea showed that the plaintiff had notice within the time within which such defects were to be made good. Beasley v. Huyett & Smith Co., 92 Ga. 273, 18 S. E. 420. In case of an express warranty that the property sold will be of a particular kind and quality, the purchaser has a right to rely on the warranty, and may plead partial failure of consideration growing out of defects discovered after acceptance, even though they would have become apparent upon an examination before delivery. Moultrie Repair Co. v. Hill, 120 Ga. 730, 48 S. E. 143. The conclusion is that the plea in question sufficiently averred a partial failure of the consideration of the note sued on, and that the demurrer to that plea was improperly sustained.

Because of that error the judgment is reversed.